O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| **MONESHIA BONNER**, | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | Civil Action No. 5:06-cv-108 |
| | § | Criminal No. 5:04-cr-629-1 |
| **UNITED STATES**, | § | |
| *Respondent*. | § | |

## OPINION & ORDER

Pending before the Court is Petitioner Moneshia Bonner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. [Civ. Dkt. No. 1].[1] After careful consideration of the petition, the facts of the case, and the governing law, the Court **DISMISSES** the petition.

**I.     BACKGROUND & TIMELINESS OF THIS PETITION**

Petitioner's motion under 28 U.S.C. § 2255 is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  Before the enactment of AEDPA, criminal defendants could file motions attacking their conviction and sentence under 28 U.S.C. § 2255 at any time.  After AEDPA, by contrast, motions under § 2255 are subject to a one-year limitations period.  § 2255.

On September 1, 2004, a jury found Petitioner Bonner guilty on two counts of violation of 8 U.S.C. § 1324, transporting an illegal alien.  [Crim. Dkt. No. 37].  Bonner initially filed an appeal, which the Fifth Circuit dismissed on November 3, 2004 as untimely.  [Crim. Dkt. No. 40].  Bonner was then sentenced on January 20, 2005 to 37 months of imprisonment.  [Crim. Dkt. No. 44].  She filed a notice of appeal with the Fifth Circuit on the same day.  [Crim. Dkt.

---

[1] "Dkt. No." refers to the docket number for the civil habeas case on file with the Court's electronic system.  The Court will cite to the docket number entries for the criminal case, 5:04-cr-629-1, with "Crim. Dkt. No.___."

No. 45]. The Fifth Circuit dismissed the case for want of prosecution on July 15, 2005, for Bonner's failure to file an appellate brief or trial record excerpts. [Crim. Dkt. No. 83].

Bonner did not petition the Fifth Circuit to reinstate her appeal or seek a writ of certiorari. The Supreme Court has held that "for federal criminal defendants who do not file a petition for certiorari with [the Supreme] Court on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires." *Clay v. United States*, 537 U.S. 522, 532 (2003). Thus, the judgment in this case became final on October 13, 2005, or 90 days after the Fifth Circuit dismissed the appeal. *See United States v. Gamble*, 208 F.3d 536, 537 (5th Cir. 2000). Bonner filed this Petition on July 17, 2006; therefore it is timely. Bonner argues that she was denied her right to appeal; that she received an illegal sentence; that her conviction was "obtained by use of evidence obtained pursuant to an unlawful arrest;" and that she suffered ineffective assistance of counsel. [Dkt. No. 1 at 4, 6].

## II. DISCUSSION

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaugh*, 955 F.2d 367, 368 (5th Cir. 1992). Generally, § 2255 claims fall under four categorizes: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255.

### A. DENIAL OF THE RIGHT TO APPEAL

Petitioner claims that she was denied the right to appeal her conviction and sentence. After she entered Bureau of Prisons custody on June 8, 2005, [*see* Crim. Dkt. No. 77], Petitioner states

she could not file the paperwork necessary for her appeal and lacked access to legal materials, causing her to miss deadlines and her appeal to be dismissed. [Dkt. No. 1 at 4]. Moreover, Petitioner states that this Court and the Fifth Circuit knew of these circumstances yet declined to extend the deadlines. *Id.*

The question is thus whether Petitioner was denied the right to appeal, or whether she abandoned her appeal. The Fifth Circuit has held that a waiver or abandonment of one's right to appeal a criminal conviction "will not be assumed unless the facts clearly support such an assumption." *Morris v. United States*, 503 F.3d 457, 458-59 (5th Cir. 1974) (citations omitted). If there is no evidence that (1) the prisoner avoided normal appellate procedures for tactical purposes, and (2) the allegations, if true, would raise an issue as to whether the prisoner knowingly, understandingly, and voluntarily abandoned the appeal, then a court must hold an evidentiary hearing regarding the issue of waiver. *Id.* at 459 (citations omitted). However, mere "failure to follow prescribed procedural rules can likewise foreclose habeas review, absent a showing of both cause for the default and prejudice resulting from it." *Buckelew v. United States*, 575 F.2d 515, 519 (5th Cir. 1978).

During sentencing, the Court informed Bonner of her rights to appeal and to appellate counsel. Prior to Bonner entering custody, the Fifth Circuit granted her motion to proceed *pro se*, and noted that she had unequivocally waived her right to counsel during the appeal. [Crim. Dkt. No. 67]. Anticipating her imminent incarceration, Bonner moved to stay incarceration pending appeal, which this Court denied on June 7, 2005.[2] [Crim. Dkt. No. 76]. On the same day, the Court also declined to extend time to voluntarily surrender. [Crim. Dkt. No. 74].

---

[2] Bonner had originally been ordered to surrender on March 29, 2005 but requested and was granted two extensions. [Dkt. Nos. 58 & 61].

3

Following Bonner's incarceration on June 8, 2005, she did not prosecute her *pro se* appeal, and on July 15, 2005 it was dismissed. [Crim. Dkt. No. 83].

The Court holds that Petitioner was not denied her right to appeal, but rather, abandoned her appeal. First, there is no indication that Bonner did not pursue her appeal for tactical reasons. *Cf. Morris*, 503 F.3d at 458-59. Regarding whether Bonner knowingly, understandingly, and voluntarily abandoned the appeal, *see id.*, the Fifth Circuit noted that Bonner unequivocally and knowingly waived appellate counsel, [Crim. Dkt. No. 67]. She thus cannot argue that lack of counsel scuttled her appeal. *Cf. Sharp v. Puckett*, 930 F.2d 450, 451-52 (5th Cir. 1991). Moreover, while Petitioner knew that she would soon enter custody, she claims that she is not responsible for the dismissal of her appeal. Rather, she insists that her incarceration, and the difficulty of pursuing the appeal from prison, caused her to miss deadlines. In sum, she claims that the Court—for not allowing her to remain free indefinitely following sentencing—is to blame for the failure of her appeal. Aside from the absurdity of the final argument, the record contradicts Petitioner's assertion that her appeal was lost solely because she was incarcerated. Bonner had from January 20, 2005, the date of her sentencing and entry of appeal, [Crim. Dkt. Nos. 44 & 45], until June 8, 2005, the date of her voluntary surrender and incarceration, to pursue the appeal or obtain appellate counsel. In light of Petitioner's informed decision to appeal *pro se*, the Court concludes that Petitioner knowingly and intentionally abandoned her appeal. Finally, Petitioner fails to show cause for her procedural defaults. She cannot claim denial of her right to appeal under 28 U.S.C. § 2255. *Cf. Buckelew*, 575 U.S. at 519.

### B.   ILLEGAL SENTENCE

Petitioner claims that the Court improperly calculated her criminal history category under the Sentencing Guidelines. "A district court's calculation under or application of the sentencing

4

guidelines standing alone is not the type of error cognizable under section 2255." *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995). This issue must normally be presented on direct appeal. *Id.*; *see also Vaugh*, 955 F.2d at 368. Because Bonner cannot show cause for her failure to prosecute her appeal, she may not collaterally attack the Court's calculation of her criminal history category. *See Walker*, 68 F.3d at 934. The Court now dismisses this claim to the extent it cannot stand on its own, but will take up the propriety of Bonner's criminal history calculation when discussing effectiveness of counsel.

### C.     UNLAWFUL ARREST & DUE PROCESS VIOLATION

Petitioner next alleges that her conviction resulted from evidence obtained pursuant to an unlawful arrest. [Civ. Dkt. No. 1 at 7]. As support, she states that she was denied due process when the Court refused to allow her to present evidence that another person committed the crime. *Id.* It is unclear how, or if, these two assertions are intended to relate to one another. Moreover, Bonner alleges no facts that support a claim of a due process violation, and does not inform the Court as to what evidence she sought to submit. Vague, conclusory, and attenuated allegations on their own cannot articulate a claim under 22 U.S.C. § 2255. *See United States v. Martinez*, 181 F.3d 627, 629 (5th Cir. 1999). Moreover, because Bonner has not shown cause for her failure to pursue these claims on direct appeal, she may not pursue them now on collateral review. *See Buckelew*, 575 U.S. at 519. The claim is dismissed.

### D.     INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Bonner alleges she suffered ineffective assistance of counsel at trial and sentencing. Ineffective assistance constitutes a violation of the Sixth Amendment right to counsel, a claim permitted under 28 U.S.C. § 2255. Petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that she suffered prejudice as a result.

5

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In assessing unconstitutional deficiency, a court indulges a strong presumption that counsel's conduct fell within the wide range of reasonable assistance.  *Id.* at 689.  "Prejudice" requires that the petitioner show a reasonable probability that, but for counsel's unprofessional errors, the proceeding's result would have been different.  *Id.* at 694.  A "reasonable probability" is a probability which undermines confidence in the outcome.  *Id.*  A court may dispose of an ineffectiveness claim by first looking to whether the petitioner has shown prejudice.  *Id.* at 697.  Finally, the same principles of effectiveness apply to habeas proceedings, with the proviso that "the presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgment."  *Id.* (citation omitted).

Despite Petitioner's failure to pursue her claims on direct appeal, the Court will consider her allegations of failures on the part of her trial lawyer.  [Civ. Dkt. No. 1 at 4-6].  First, she states that her attorney failed to communicate with her.  This occurred before trial regarding strategy, the validity of evidence, and potential defenses, and during other "court proceeding[s] that defendant was unaware of."  [Civ. Dkt. No. 1 at 5].  Furthermore, Petitioner claims that counsel did not discuss documents such as the Presentence Investigation Report (PSR) with her.  She states that her attorney disregarded her own statements which would have assisted in her defense at trial as well as at sentencing.  Petitioner also claims that counsel failed to make proper motions, such as pretrial suppression of a statement allegedly obtained by coercion, or to object at sentencing to an improperly calculated criminal history category.  Finally, Bonner claims that her lawyer did not discuss with her the number of illegal aliens she was alleged to have transported.  She claims there "were only several," as stated by witnesses at trial, and counsel's failure to establish the correct number led to a higher sentence.

6

### 1. Failure to Communicate

An attorney has a duty to consult with the client regarding important decisions and to keep the client "informed of important developments in the course of the prosecution." *Strickland*, 466 U.S. at 688. Nevertheless, Bonner must still show that her attorney's shortcomings caused prejudice, namely, that the jury's verdict or the court's sentence "would reasonably likely have been different absent the errors." *Id.* at 696. This demands more than reciting a collection of missteps: the defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. Petitioner fails to allege either how counsel's acts or omissions fell below a reasonableness standard, or how a lack of communication prejudiced the outcome of her trial. She likewise fails to allege how her attorney's decisions to disregard certain of her own statements, for instance, regarding the number of illegal aliens she transported, were not the product of professional judgment. The PSR repeatedly contradicts Bonner's assertion that there "were only several"; rather, Border Patrol found well over thirty aliens on the floor of the tractor Bonner was towing. *See* PSR at 3, 6, 14; *see* U.S. Sentencing Guidelines § 2L1.1(b)(2)(B) (2004 ed.)[3] (requiring six-point increase if defendant transported between 25 and 99 aliens). Moreover, at sentencing, Petitioner indicated that she had sufficient time to review the PSR with her attorney. Petitioner's litany of attorney errors amounts only to general criticism, not a legally sufficient claim of ineffectiveness. *Cf. Strickland*, 466 U.S. at 697 ("The object of an ineffectiveness claim is not to grade counsel's performance."). For these reasons, Petitioner has failed to show either how her attorney's failure to communicate was deficient or prejudiced her case.

---

[3] The Court references the 2004 Guidelines Manual because it used this edition while sentencing Bonner.

7

### 2. Failure to Move to Suppress

Bonner next claims ineffectiveness because her attorney failed to move to suppress a statement obtained by coercion. Bonner neither alleges facts indicating what statement her attorney should have objected to, nor why the statement should have been suppressed. She also does not indicate how this shortcoming prejudiced her. Moreover, she has not shown cause for why she did not fully pursue this claim on direct appeal, despite having knowingly refused the services of her trial lawyer for purposes of her appeal. For these reasons, she has failed to articulate a claim of ineffective assistance of counsel on this matter.

### 3. Failure to Object to Criminal History Category

Lastly, Bonner claims that her attorney rendered ineffective assistance of counsel by failing to object to an improperly calculated criminal history category during sentencing. Bonner correctly asserts that a miscalculation occurred. The Court is concerned about the error in sentencing, and therefore discusses the merits of this claim at length. Ultimately, because Petitioner shows neither prejudice, nor cause for failing to pursue this claim on direct appeal, the claim will be dismissed.

#### a. Petitioner's Criminal History

Petitioner asserts that the Presentence Investigation Report (PSR) incorrectly placed her in criminal history category II, instead of category 0 or I.[4] As will become evident, this argument is correct. The PSR indicates that Bonner pleaded nolo contendere to one count of driving with a suspended or revoked license in Jacksonville, Florida. She was adjudged guilty of this offense on April 7, 1995, sentenced to two days of time served in county jail, and fined $50. Bonner also pleaded nolo contendere to multiple counts of obtaining property with a worthless check on two separate occasions in Jacksonville, Florida. Bonner was adjudged guilty and ordered to pay

---

[4] Unless otherwise noted, the facts discussed in this section are to be found at pages 7 through 9 of the PSR.

8

restitution in each case. The convictions occurred on April 11, 1995 and January 25, 1996. Using the 2004 Sentencing Guidelines Manual, the PSR adds no points for the suspended license conviction, and one point for each worthless check conviction, for a total of two points and a criminal history category of II. *See* U.S. Sentencing Guidelines Manual (2004 ed.) § 5A. Along with an offense level of twenty points, this yielded a guideline sentencing range of 37 to 46 months. Had Bonner's convictions been disregarded, giving her a criminal history category of 0, the range would have been 33 to 41 months.

Bonner first notes that the convictions predate her sentencing by nearly ten years, and do not relate to the offense of alien smuggling. These observations, while correct, are irrelevant. *See* U.S. Sentencing Guidelines Manual (2004 ed.) §§ 4A.1.1, 4A1.2. Sentences resulting in less than one year and one month of imprisonment, if imposed within ten years of the defendant's *commencement* of the instant offense, are counted. § 4A1.2(e)(2). Bonner smuggled aliens on March 11, 2004. Therefore, the worthless check convictions were not too distant in time to be considered in her criminal history calculation.

       **b.**  **Similarity of "Insufficient Funds Check" and "Obtaining Property With a Worthless Check"**

Bonner's attorney did not argue during sentencing that Bonner's convictions for obtaining property with a worthless check fell within a category of excluded offenses. While Bonner has not raised this as a source of error, the Court notes that counsel's failure to object fell below a reasonable standard of competence. However, as the Court will explain, this does not entitle Petitioner to relief because the error did not result in prejudice to her.

9

### i.     "Insufficient Funds Check"

Depending on the circumstances, the Guidelines categorically exclude certain convictions when calculating a defendant's criminal history category.  *See* U.S. Sentencing Guidelines Manual (2004 ed.) § 4A1.2(c)(1):

> Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are counted only if (A) the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense: . . .
>
>     Driving without a license or with a revoked or suspended license . . .
>
>     Insufficient funds check . . . .

Bonner was not incarcerated, nor apparently sentenced to at least one year of probation, for either offense.  Moreover, writing bad checks is dissimilar to alien smuggling.  Thus, if an "insufficient funds check" conviction under § 4A1.2(c)(1) is similar to Bonner's "worthless check" and "obtaining property with a worthless check" convictions in Florida, these convictions should have been excluded from the calculation of Bonner's criminal history category.[5]

### ii.     "Common Sense Approach" to Determine Similarity

The Court first must determine whether Petitioner's convictions are similar to "insufficient funds check."  The Guidelines Manual's redactors have not "listed by title the crimes established by statute in the fifty states and the United States Congress.  Instead, they used generic terms such as 'insufficient funds check,' without attempting to define the 'generic' crimes."  *United States v. Gadison*, 8 F.3d 186, 193 (5th Cir. 1993).[6]  Accordingly, in determining the similarity of offenses, the Fifth Circuit uses a "common sense approach."  *United States v. Hardeman*, 933 F.2d 278, 281 (5th Cir. 1991).  This comprises "all possible factors of similarity, including a

---

[5] The PSR properly excluded Petitioner's conviction for driving with a suspended license.
[6] However, the Guidelines indicate that "insufficient funds check" does not include "any conviction establishing that the defendant used a false name or non-existent account."  § 4A1.2, cmt. n.13.

10

comparison of punishments imposed for the listed and unlisted offenses, the perceived seriousness of the offense as indicated by the level of punishment, the elements of the offense, the level of culpability involved, and the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct." *Id.* The court looks specifically to the particular subdivision of the statute under which a defendant was convicted. *United States v. Fierro-Reyna*, 466 F.3d 324, 327 (5th Cir. 2006). The common sense approach screens out insignificant criminal activity, while weighing the seriousness of past offenses and the potential they suggest for future criminality. *Hardeman*, 933 F.2d at 281-82 (citations omitted). No factor receives dispositive weight, and "each offense-similarity comparison is *fact specific*." *United States v. Lamm*, 392 F.3d 130, 132 (5th Cir. 2004) (emphasis in original) (citing *Gadison*, 8 F.3d at 194). The *Hardeman* panel observed that the "punishment imposed for a particular offense serves as a reasonable proxy for the perceived seriousness of the crime." 933 F.2d at 282.

### iii.   Similarity of Offenses to "Insufficient Funds Check"

The Fifth Circuit has twice addressed at length what constitutes an offense similar to "insufficient funds check." In *Gadison*, "comparative punishment analysis" revealed that "theft by check" in Texas is identical to insufficient funds check. 8 F.3d at 194. The *Gadison* court noted that the defendant had pleaded guilty to a Class C misdemeanor, because he paid a fine of $200.00. *Id.* Texas punished this offense equally with the Class C misdemeanor of writing a bad check, the only difference being that "theft by check" involved an additional bad result—the receipt of property for the bad check. *Id.* (citations omitted). The government, which has the burden of proof of proving facts to support a sentence enhancement, had offered no evidence of greater severity of the crime. *Id.* at 194 n.3 (citation omitted). Moreover, "theft by check" and "bad check" carried an equal degree of culpability in Texas. *Id.* at 194-95. Finally, because

11

Class C misdemeanors involve a theft of under $20.00, the conviction indicated no likelihood of future criminal conduct. *Id.* at 195. Concluding that the offense of "theft by check" was similar to "insufficient funds check," the court held it was improper for the sentencing court to have included the conviction in the defendant's criminal history score. *Id.*

By contrast, the Fifth Circuit in *Lamm* found that a Texas petty theft conviction, a Class C misdemeanor punishable by no more than a $500.00 fine, was not similar to writing a bad check. 392 F.3d at 134-35. Primarily, the court noted that "petty theft involves a heightened risk of physical confrontation and harm to others," which is lacking when one obtains property with a bad check. *Id.* at 134. Moreover, the defendant had four such convictions, the most recent being two years before the offense for which he was sentenced, indicating to the court a likelihood of recurring criminal conduct. *Id.* at 134-35. Finally, theft often goes undetected, whereas writing a bad check—without a false name or non-existent account, *cf.* § 4A1.2, cmt. n.13—is traceable to the perpetrator, meaning it is less difficult to apprehend a person issuing a bad check. *Lamm*, 392 F.3d at 135. Applying the "common sense approach," the court held that petty theft was not similar to insufficient funds check, making it proper for the district court to consider these convictions in the defendant's criminal history calculation. *Id.*

### iv.  Application of "Common Sense Approach" to Bonner's Convictions

Applying the "common sense approach," the Court concludes that Petitioner's convictions should have been excluded under § 4A1.2(c)(1). *See Hardeman*, 933 F.2d at 281.

There are few details regarding Bonner's worthless check convictions. The PSR states that details "have been requested and are forthcoming," but no supplement to the PSR was ever submitted to the Court. Bonner was not fined or incarcerated for the worthless checks, but rather only ordered to pay restitution. It is unknown what subsections of the Florida statutes Bonner

12

violated. *Cf. Fierro-Reyna*, 466 F.3d at 329 (requiring a court to look only to the particular subsection under which a defendant was convicted). However, based upon the Court's review of the PSR, it is most likely that Bonner was convicted under the Florida offense of "giving worthless checks." *See* Fla. Stat. § 832.05 (West 2007).[7] Subsection two of this statute forbids issuing a check with knowledge that the issuer has insufficient funds on deposit. *See* § 832.05(2)(a). If the amount is under $150, the violation is a first-degree misdemeanor. If the value is $150 or above, it is a third-degree felony. § 832.05(2)(b). Subsection four, "Obtaining property or services in return for worthless checks," closely mirrors subsection two, and under nearly identical terms prohibits obtaining "services, goods, wares, or other things of value by means of a check . . . knowing . . . that the maker thereof has not sufficient funds . . . ." § 832.05(4)(a). The punishments are identical to those in subsection two. *Compare* § 832.05(4)(c) *with* § 832.05(2)(b).

Two of the three convictions of April 11, 1995 are labeled by the PSR as misdemeanors, while all the other worthless check convictions, one on April 11, 1995 and three separate convictions on January 25, 1996, are not labeled as misdemeanors or felonies. However, given the absence of a fine or incarceration, it is more probable than not that these were misdemeanor convictions. While Florida law does not prescribe minimum sentences or fines for most felonies and misdemeanors, *see* Fla. Stat. Ann. §§ 775.082, 775.083 (West 2007), the apparent leniency of the sentences suggests that the sentencing judge considered the convictions minor. Finally, the PSR never indicates that Bonner may have used a false name or non-existent account to perpetrate any of these offenses. *Cf.* § 4A1.2, cmt. n.13.

Bonner's convictions are similar to the generic offense of "insufficient funds check" listed in the Guidelines Manual. The punishments for "giving worthless checks" and "obtaining property

---

[7] There have been no substantive changes to the statute since 1995, when Bonner was convicted.

13

or services in return for worthless checks" are identical. The elements are identical, with the addition that under the "obtaining property" offense, a bad act occurs, namely obtaining property, which itself is not probative of the defendant's culpability. *Cf. Gadison*, 8 F.3d at 194. The lack of any incarceration or fine for Bonner's convictions also suggests that she was not highly culpable. *Cf. Hardeman*, 933 F.2d at 282. Finally, the convictions all predate the defendant's offense of alien smuggling by at least eight years, suggesting a lower likelihood of recurring criminal conduct. *Cf. Lamm*, 392 F.3d at 134-35 (holding that multiple convictions between two and six years before offense showed a likelihood of recurring criminality). In sum, Bonner's worthless check convictions are excludable under § 4A1.2(c)(1).

### c. Effectiveness of Counsel In Light of Failure to Raise Objection

The Court holds that counsel was deficient for failing to object to the PSR's inclusion of Bonner's worthless check convictions. However, because Petitioner cannot show prejudice, and furthermore, has not shown cause for her failure to pursue this claim on direct appeal, her claim of ineffective assistance as a whole fails.

Petitioner's Florida convictions for "worthless check" and "obtaining property with a worthless check" are similar to insufficient funds check, and therefore excludable from her criminal history calculation. However, Bonner's attorney never filed written or oral objections to the PSR's determination that Bonner merited a criminal history category of II. Because a reasonably competent attorney would have objected to an improper criminal history calculation, counsel's performance fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687. Concerning prejudice, "the habeas court must determine whether there is a probability that but for counsel's deficiency, the defendant's sentence would have been significantly less harsh." *United States v. Acklen*, 47 F.3d 739, 742 (5th Cir. 1995). Had the

Court sustained such an objection, a revised sentencing range would have provided for a sentence from 33 to 41 months, not 37 to 46 months. *See* U.S. Sentencing Guidelines Manual § 5A (2004 ed.).

Despite counsel's error, Petitioner cannot show prejudice. The Court's sentence of 37 months would have been permissible under the lower parameters of 33 to 41 months. *Cf.* 28 U.S.C. § 2255 (allowing collateral attack of a sentence "in excess of the maximum authorized by law"). The Court imposed this sentence shortly after the United States Supreme Court issued its holding in *United States v. Booker*, 543 U.S. 220 (2005), which made the Sentencing Guidelines advisory, and there is no indication that the Court would have sentenced Bonner to a lower sentence had it felt that option was available. The Court specifically stated during sentencing that it was its independent judgment that a sentence of 37 months was proper. Nothing indicates that the Court would have granted a lower sentence had the Court come up with a slightly lower guideline calculation. Counsel's error therefore did not cause prejudice to Bonner because she cannot show that but for the error, her sentence would likely have been "significantly less harsh." *Cf. Acklen*, 47 F.3d at 742. Moreover, the Court reiterates that Bonner did not raise this error on direct appeal and has not shown cause for her default. *Cf. Buckelew*, 575 U.S. at 519; *United States v. Navejar*, 963 F.2d 732, 735 (5th Cir. 1992) (noting that the Fifth Circuit typically only evaluates claims of ineffective assistance on direct appeal where the record allows the court to fairly evaluate the merits of the claim). For this reason as well, Bonner has not articulated a claim that she suffered ineffective assistance of counsel.

### III.     CONCLUSION

Based on the foregoing, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 is **DISMISSED** with prejudice.  Additionally, should Petitioner seek one, a certificate of appealability is **DENIED**.

IT IS SO ORDERED.

Done this 26th day of October, 2007, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**